# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY JENNINGS LITTLE, | Case No. 1:16-cv-00846-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On June 19, 2016, Plaintiff Bradley Jennings Little ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Doc. 1.) The matter is currently before the Court on only Plaintiff's opening

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

brief—as the Commissioner failed to file a timely opposition brief[2]—which was submitted without oral argument.[3]

## II. BACKGROUND

On October 24, 2012, Plaintiff filed a claim for DIB payments, alleging he became disabled on February 1, 2012, due to "[u]lcerated stoma" and a colostomy following treatment for colon cancer. (Administrative Record ("AR") 10, 13, 66, 77, 157, 184, 207.) Plaintiff was born on August 16, 1963, and was 48 years old on the alleged disability onset date. (AR 66, 77.) From 1987 to February 1, 2012, Plaintiff was an insurance broker. (AR 173–78, 185.)

### A. Relevant Medical Evidence[4]

In 1992, Plaintiff was diagnosed with colon rectal cancer. (AR 207, 340.) Plaintiff had a reversal of the colostomy performed in 1992, which was replaced in 2006. (AR 207, 340.)

Plaintiff underwent a left wrist arthroscopy, left ECU tenosynovectomy, and left ECU tendon sheath reconstruction in February 2012. (AR 229–31.) Plaintiff's physical therapist Lindsay Pimentel, who was treating him for left wrist/hand tenosynovitis, opined in February 5, 2013, that Plaintiff "did not show limitations in sitting, hearing or speaking, or limitations in walking or standing." (AR 331.) Plaintiff saw Ms. Pimentel six times from April–May 2012, and she noted that while Plaintiff "made some progress during therapy, mostly with regards to strength, reduced swelling and increasing function . . . his symptoms of hand pain during activity and mild edema and some [range of motion] have not been completely resolved." (AR 331.) By March 2012, Plaintiff "no longer complain[ed] of pain on the left wrist at all." (AR 263.)

---

[2] By its order entered February 17, 2017, the Court granted Plaintiff's request for an extension and ordered that Plaintiff could file his opening brief by no later than February 22, 2017. (Doc. 12 at 2.) The order provided that "[a]ll other deadlines set forth in the Scheduling Order (Doc. 5) are modified accordingly." (*Id.*) As such, the deadline for the filing of Defendant's responsive brief was enlarged to March 24, 2017. On May 2, 2017—over one month after the deadline for Defendant's responsive brief—the parties filed a stipulation in which they requested leave for Defendant to file her opposition by June 1, 2017 (the "Request"), on grounds that defense counsel "improperly calendar[ed] the deadlines in this case" and had "a very heavy workload." (Doc. 15 at 1–2.) The Court denied the Request on May 9, 2017, refusing to grant an extension "where Defendant waited for over one month after this deadline to seek such relief," and noting that "Defendant was free to timely request an extension prior to the current deadline . . . regardless of the volume of defense counsel's workload." (Doc. 16 at 1.)

On May 10, 2017, Defendant nevertheless filed her responsive brief. (Doc. 17.) Defendant's untimely responsive brief was filed without leave of Court and, therefore, the Court in its discretion declines to consider it.

[3] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6 & 8.)

[4] As Plaintiff's assertion of error is limited to the ALJ's consideration of his alleged physical (as opposed to mental) impairments, only evidence relevant to that argument is set forth below.

In December 2012, Plaintiff complained of abdominal and flank pain on his right side, radiating to his right hip and right shoulder, with no other digestive symptoms. (AR 273.) An abdominal CT scan showed a medium-sized peristomal hernia with no bowel obstruction, mild hepatic steatosis, and a nonobstructing kidney stone. (AR 274–75.)

On March 21, 2013, consultative examining physician Rustom F. Damania, M.D., evaluated Plaintiff. (AR 340–45.) He found Plaintiff's range of motion in his neck, back, ankles, and upper and lower extremities were within normal limits. (AR 342–44.) Plaintiff's grip strength was 80-80-80 on the right and 80-100-90 on the left. (AR 342.) Dr. Damania observed Plaintiff had a "soft" abdomen with "multiple midline surgical scars" and a peristomal hernia. (AR 342.) The skin around Plaintiff's colostomy bag was "considerably inflamed and irritated." (AR 342.) Plaintiff reported no history of gout. (AR 342.) There was no tenderness to palpation in the midline or parasupinal areas of Plaintiff's back. (AR 343.) Plaintiff had a straight leg raising test was negative. (AR 343.) Dr. Damania observed no muscle spasm and noted that Plaintiff's muscle tone appeared to be equal throughout. (AR 343.)

Dr. Damania's impression was that Plaintiff had "[s]tatus post colon rectal cancer 21 years ago with colostomy," diarrhea, insomnia due to stress, possible hypertension, and gallstones. (AR 344.) From this, Dr. Damania concluded that Plaintiff could (1) lift and carry 10 pounds occasionally and less than 10 pounds frequently; (2) stand and walk four hours out of an eight hour work day with normal breaks; (3) sit four hours out of an eight hour day; (4) not perform frequent bending, stooping, or crouching. (AR 344.) Dr. Damania found no other postural limitations, no manipulative limitations, and no relevant visual or communicative impairments. (AR 344.)

On April 3, 2013, Disability Determinations Service non-examining consultant, A. Nasrabadi, M.D., reviewed the record and analyzed the case. (AR 70–74.) Dr. Nasrabadi concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit 6 hours in an 8-hour workday; could not climb ladders, ropes, and scaffolds; but could perform all other postural activities frequently. (AR 73–74.) Disability Determinations Service non-examining consultant John Fahlberg, M.D., reviewed the record and analyzed the

3

case on May 30, 2013, and assessed the same residual function capacity of Plaintiff as Dr. Nasrabadi. (AR 82–88.)

On April 29, 2013, Plaintiff complained to Paul L. Hanchett, M.D., of diffuse abdominal pain and pains on his right side. (AR 353.) A CT scan showed "a little bit of a hernia there but nothing else" in Plaintiff's right side. (AR 353.) Dr. Hanchett observed that the CT scan "show[ed] nothing to explain [Plaintiff's] pains." (AR 353.) Plaintiff denied bloating, nausea, and vomiting, and noted that "[a]s long as he takes omeprazole he gets 100% relief." (AR 353.) In June 2013, Plaintiff requested that Dr. Hanchett "give him permanent disability because he never knows what his stool is going to do" or "when he is going to have pain." (AR 350.) Dr. Hanchett noted that Plaintiff "has symptoms that sound like the irritable bowel syndrome." (AR 350.) Plaintiff reported that "when he has pain he just doesn't do anything so he doesn't go to work and misses hours and therefore never keeps a job." (AR 350.) Dr. Hanchett stated that he did not know Plaintiff very well, and therefore was not qualified to say he is disabled. (AR 351.)

On December 19, 2013, Plaintiff underwent a laparoscopic repair of his parastomal hernia, cholecystectomy, and extensive lysis of adhesions by surgeon Saber Ghiassi, M.D. (AR 379–82.) A few days later, on December 22, 2013, Plaintiff had a laparoscopic lysis of adhesions and a reduction of incarcerated parastomal hernia repair with mesh by Dr. Kelvin E. Higa. (AR 383–84.)

Plaintiff was seen post-operatively on January 2, 2014, and reported that he was "doing well." (AR 376.) The treatment notes of that visit indicate that Plaintiff wanted to know when he could return to playing golf, and that Plaintiff was "more concerned with getting permanent disability." (AR 376.) Plaintiff's post-op examination was normal. (AR 377.) On January 11, 2014, Plaintiff attended a follow up appointment with Dr. Ghiassi, where he was observed to be "doing well," with "[r]esolved" upper right quadrant pain and normal colostomy function. (AR 374.) Plaintiff was noted to be "[b]ack to routine activities without difficulty." (AR 374.) Dr. Ghiassi's January 11 treatment note indicates Plaintiff threatened to consult a lawyer or the media regarding his post-op hernia recurrence unless Dr. Ghiassi gave him permanent disability. (AR 375.)

On February 4, 2014, Plaintiff saw Dr. Higa, "[h]oping to get cleared to exercise." (AR 372.) Dr. Higa observed that Plaintiff's wounds were healing well, with no sign of recurrent parastomal hernia, and advised that Plaintiff not participate in exertional activities for at least two more months. (AR 373.) Plaintiff saw Dr. Higa again on March 4, 2014, and inquired whether he was "clear to start doing ab work outs." (AR 370.) Plaintiff was doing well with no recurrence, and his postop examination was normal. (AR 371.) On May 1, 2014, Plaintiff reported feeling "fantastic," with no recurrence, and normal examination. (AR 368–69.)

On July 23, 2014, Plaintiff reported feeling "just okay." (AR 360.) He complained of pain on his right side following removal of his gallbladder, "tremor" in the periumbilical area, and "cramping" under his rib cage for past 2-3 years. (AR 360.) Plaintiff felt that his parastomal hernia had returned but was not bothering him. (AR 360.) He was experiencing constipation that possibly was contributing to his abdominal pain, and wondered whether a laxative could help. (AR 360.) He denied fever, chills, nausea, vomiting, and diarrhea. (AR 360.) On examination, Plaintiff's abdomen was not distended and soft, his bowel sounds were normal hypoactive. (AR 361.) His stoma site was not tender, turgor was normal, and the incision on the abdomen stoma site was clean with no erythema. (AR 362.) Plaintiff was prescribed Vicodin for his diffuse abdominal pain. (AR 362.)

A CT scan of Plaintiff's abdomen and pelvis was performed on September 17, 2014. (AR 416–17.) The scan showed a few tiny scattered right and left nonobstructing renal calcifications, possibly representing papillary calcifications with no evident hydroureter or hydronephrosis, scattered lower pelvic calcifications or phleboliths, and multilevel degenerative changes of the spine, with no evidence of acute intraabdominal or pelvic CT abnormality. (AR 417.)

**B.      Administrative Proceedings**

Plaintiff filed an application for DIB on October 24, 2012, alleging he became disabled on February 1, 2012. (AR 10, 13, 66, 77, 157, 184, 207.) The agency denied Plaintiff's application for benefits initially on April 11, 2013, and again on reconsideration on June 18, 2013. (AR 66–90, 100–103, 109–14.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 115–16.) On October 2, 2014, Plaintiff appeared with counsel and

testified before an ALJ. (AR 22–44.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff's past work for the last 15 years was an insurance broker, Dictionary of Operational Titles (DOT) code 250.257-010, which was light exertional work with a specific vocational preparation (SVP)[5] of 6. (AR 45.) The ALJ asked the VE to consider a person with the same vocational profile as Plaintiff. (AR 46.) The VE was also to assume this person had the following residual functional capacity: can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; can stand, walk, and sit approximately six hours in an eight-hour workday; can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to such workplace hazards as working at unprotected heights, fast-moving dangerous machinery, and traversing uneven or slippery terrain; must avoid temperature extremes, especially extreme heat; must work in a close proximity to a restroom and be allowed to take up to two additional five minute breaks to use the bathroom at will. (AR 46.) The VE testified that such a person could perform Plaintiff's past relevant work, but no other work would be available. (AR 46–47.) The ALJ asked a follow up question regarding the first hypothetical worker who must also be allowed to work off task 5% of the workday one to two times a week. (AR 47.) The VE testified that this individual could perform Plaintiff's past work, but no other work. (AR 47.)

The ALJ then proposed a third hypothetical, assuming the same individual in the second hypothetical, but the individual was limited to lifting and carrying up to 10 pounds either occasionally or frequently; could stand and walk approximately four hours and sit approximately six hours; and could occasionally bend, stoop, and crouch, with all other limitations remaining the same. (AR 47–48.) The VE testified that that there would be no work such person could perform. (AR 48.)

The ALJ's fourth hypothetical asked VE to consider a person who can lift and carry up to

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

10 pounds; stand and walk two hours and sit approximately six hours in an eight-hour workday; frequently climb ramps and stairs but never ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to such workplace hazards as working at unprotected heights, fast-moving dangerous machinery, and traversing uneven or slippery terrain; must avoid temperature extremes, especially extreme heat; must work in a close proximity to a restroom and be allowed to work off task up to 5% of the workday once a week. (AR 48.) The VE testified that this individual could not perform Plaintiff's past work, but could perform other work in the national economy as an information clerk, DOT code 237.367-046, sedentary and SVP 2; order clerk, DOT code 209.567-014, sedentary and SVP 2; and inspector, DOT code 726.684-050, sedentary and SVP 2. (AR 49.)

Plaintiff's counsel asked the VE to consider a fifth hypothetical, assuming the same individual in the first hypothetical but the individual was limited to lifting less than 10 pounds occasionally; standing, walking, and sitting up to four hours in an eight-hour workday; can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and craw, with all other limitations remaining the same. (AR 50.) The VE testified that there would be no work such person could perform, Plaintiff's past work included. (AR 50.) Finally, Plaintiff's counsel asked the VE to consider a sixth hypothetical, assuming the same individual in the fourth hypothetical but with the additional limitation of needing unscheduled work breaks throughout the workday as needed. (AR 50.) The VE testified that there would be no work such person could perform. (AR 50.)

**C.     The ALJ's Decision**

In a decision dated January 6, 2015, the ALJ found that Plaintiff was not disabled. (AR 10–17.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 12–17.) The ALJ decided that Plaintiff has not engaged in substantial gainful activity since February 1, 2012, the alleged onset date (step 1). (AR 11.) The ALJ found that Plaintiff had the severe impairments of history of colon/rectal cancer with colostomy and gout (step 2). (AR 12.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

("the Listings") (step 3). (AR 12.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[6]

> to perform less than the full range of light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours in an 8-hour day, and sit for six hours in an 8-hour day. He can frequently climb ramps and stairs, but never ladders, ramps, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to hazards of unprotected heights, fast moving machinery, and uneven/slippery terrain and should avoid temperature extremes, especially extreme heat. He must be in close proximity to a restroom and must be allowed to take up to two additional five-minute breaks to use the restroom at will.

(AR 12–13.)

The ALJ determined that, given his RFC, Plaintiff was able to perform his past work as an insurance broker (step 4). (AR 16–17.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not fully credible. (AR 15.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

---
[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

8

(1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If

1 not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that "the ALJ erred by rejecting Dr. Damania's opinion due to an alleged improvement." (Doc. 13 at 9.)

### A. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed

deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). If an ALJ opts to not give a treating physician's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6) in determining how much weight to give the opinion. These factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (c)(3)–(6).

## B. The ALJ Did Not Err in the Assessment of the Opinion of Consulting Examiner Dr. Damania.

Plaintiff was evaluated by Dr. Damania on March 21, 2013. (AR 340–45.) His clinical findings included a "soft" abdomen with "multiple midline surgical scars," a peristomal hernia, and that skin around Plaintiff's colostomy bag was "considerably inflamed and irritated." (AR 342.) Dr. Damania's impression was that Plaintiff had "[s]tatus post colon rectal cancer 21 years ago with colostomy," diarrhea, insomnia due to stress, possible hypertension, and gallstones. (AR 344.) From this, Dr. Damania concluded that Plaintiff could (1) lift and carry 10 pounds occasionally and less than 10 pounds frequently; (2) stand and walk four hours out of an eight hour work day with normal breaks; (3) sit four hours out of an eight hour day; (4) not preform frequent bending, stooping, or crouching. (AR 344.) Dr. Damania found no other postural limitations, no manipulative limitations, and no relevant visual or communicative impairments. (AR 344.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Damania's opinion is contradicted by the medical opinion evidence of Disability Determinations Service non-examining consultants Drs. Nasrabadi and Fahlberg, who concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit 6 hours in an 8-hour workday; could not climb ladders, ropes, and scaffolds; but could perform all other postural activities frequently. (AR 73–74.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for

11

rejecting Dr. Damania's opinion.

In reviewing the medical evidence and rejecting Dr. Damania's opinion, the ALJ stated that she "gives little weight to Dr. Damania's opinion as [Plaintiff] condition has improved, he has had a good recovery, and many of his issues have resolved." (AR 14.) The ALJ properly rejected Dr. Damania's assessment of Plaintiff because it was not supported by the objective medical evidence, specifically by findings that Plaintiff's condition has improved following his parastomal hernia surgeries in December 2013. An ALJ may properly discount an examining physician's opinion that is not supported by the medical record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

The record contains evidence that after Plaintiff's parastomal hernia surgeries in December 2013, Plaintiff's ulcerated stoma had improved. (AR 360–62, 368–74, 376–77.) The ALJ noted that Plaintiff's postoperative examinations were normal in January and February 2014, and he was observed to be "doing well," with his upper right quadrant pain "resolved." (AR 15–16, 374, 377, 368–69.) Plaintiff was "[b]ack to routine activities without difficulty," and was "[h]oping to get cleared to exercise," including golf and "ab work outs." (AR 370, 372, 374, 377.) The ALJ observed that, in May 2014, Plaintiff reported feeling "fantastic," with no recurrence of parastomal hernia. (AR 368–69.) In July 2014, Plaintiff complained of pain on his right side following removal of his gallbladder, but wondered whether constipation was contributing to his abdominal pain. (AR 360.) The ALJ noted that Plaintiff felt that his parastomal hernia had returned but was not bothering him. (AR 16, 360.) As the ALJ observed, on examination Plaintiff's abdomen was not distended and soft, his bowel sounds were normal hypoactive. (AR 361.) His stoma site was not tender, turgor was normal, and the incision on the abdomen stoma site was clean with no erythema. (AR 362.) A CT scan of Plaintiff's abdomen and pelvis in September 2014 showed a few tiny scattered right and left

12

nonobstructing renal calcifications, possibly representing papillary calcifications with no evident hydroureter or hydronephrosis, scattered lower pelvic calcifications or phleboliths, and multilevel degenerative changes of the spine, otherwise no evidence acute intraabdominal or pelvic CT abnormality. (AR 416–17.) The ALJ's observation, based on the objective medical evidence, of Plaintiff's improvement after surgery is a specific and legitimate reason for rejecting Dr. Damania's opinion. *See Nino v. Colvin*, No. 1:13–CV–832 GSA, 2015 WL 3756889, at *5 (E.D. Cal. June 16, 2015) ("District courts have held that an ALJ's conclusion, supported by substantial evidence in the record, that a claimant's symptoms improved and stabilized with treatment counts as a specific and legitimate reason to discount a doctor's opinion."). *See also Harris v. Comm'r of Soc. Sec. Admin.*, No. CV-16-01994-PHX-GMS, 2017 WL 2060418, at *5 (D. Ariz. May 15, 2017) (finding rejection of treating physician's opinions proper where they were "inconsistent with the medical evidence that demonstrated [the plaintiff] improved while undergoing conservative treatment and medication."); *Palma v. Colvin*, No. 2:15-CV-1736-EFB, 2016 WL 8730663, at *6 (E.D. Cal. Sept. 30, 2016).

Moreover, the ALJ discounted Plaintiff's credibility in this case, relying in part on the objective medical evidence, including evidence that "his post-operative examinations have been normal since the surgery," to find that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (AR 14–16.) Plaintiff has not challenged the sufficiency of the evidence supporting the ALJ's adverse credibility finding in this case or the adequacy of the ALJ's reasons to explain this finding. Therefore, the Court considers the ALJ's unchallenged credibility finding to be binding. S*ee, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

Thus, substantial evidence supports the ALJ's finding that Plaintiff's condition had improved, he had recovered well, and many of his issued had resolved following his surgeries. Accordingly, the lack of supporting medical evidence, as evidenced by Plaintiff's improvement post-surgically, was a specific and legitimate reason, *see Nino*, 2015 WL 3756889, at *5;

13

*Palma,* 2016 WL 8730663, at *6, for the ALJ to discount Dr. Damania's assessment. *See Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957.

## C. The ALJ Did Not Err By Not Considering Whether Plaintiff Was Entitled to a Closed Period of Disability.

Plaintiff contends that the ALJ "failed to analyze whether [Plaintiff] was disabled for a closed period," namely from February 1, 2012, the alleged onset date, to December 2013, the date of Plaintiff's surgeries. (Doc. 13 at 9.) Substantial objective medical evidence in the record from this period, however, supports the ALJ's determination that Plaintiff was not disabled within the meaning of the Act for that duration.

To obtain a closed period of disability, the evidence must show that (1) the claimant could not engage in substantial gainful activity for a continuous period of twelve months; (2) the disability ceased by the time of adjudication; and (3) the claimant met all the other eligibility requirements for benefits. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a); *Miller v. Colvin*, No. 1:12–cv–2063–SKO, 2014 WL 3735345, at *11 (E.D. Cal. July 28, 2014). *See also Rosales v. Colvin*, 2013 WL 1410387, at *4 (D. Ariz. Apr. 8, 2013) ("The ALJ is required to consider a closed period of disability if evidence in the record supports a finding that a person is disabled for a period of not less than twelve months."); *Reynoso v. Astrue,* No. CV 10–04604–JEM, 2011 WL 2554210 at *3 (C.D. Cal. June 27, 2011); *Johnson v. Astrue,* No. CV07–7263SS, 2008 WL 5103230 at *4 (C.D. Cal. Dec. 2, 2008).

The ALJ noted the opinions of Disability Determinations Service non-examining consultants Drs. Nasrabadi and Fahlberg, who in April and May 2013, respectively, concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit 6 hours in an 8-hour workday; could not climb ladders, ropes, and scaffolds; but could perform all other postural activities frequently. (AR 14, 73–74, 82–88.) A CT scan on Plaintiff's abdomen in April 2013 showed "a little bit of a hernia there but nothing else" in Plaintiff's right side, and in particular, the scan "show[ed] nothing to explain [Plaintiff's] pains." (AR 15, 353.) As the ALJ observed, Dr. Hanchett observed in June 2013 that Plaintiff's symptoms instead "sound[ed] like [] irritable bowel syndrome." (AR 15, 350.)

14

1 | The ALJ further noted that the "record generally suggests that [Plaintiff] was seeing physicians primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms," citing Plaintiff's request for permanent disability from Dr. Hanchett in June 2014. (AR 15, 350.) Plaintiff does not challenge this finding by the ALJ.

Finally, as the ALJ observed, Dr. Hanchett found in April 2013 "[a]s long as [Plaintiff] takes omeprazole he gets 100% relief." (AR 14, 353.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to medication).

This evidence fails to demonstrate that Plaintiff had disabling limitations as a result of his medical impairments from February 1, 2012 to December 2013. Contrary to Plaintiff's assertion that "the ALJ erred by failing to adequately describe [Plaintiff's] medical improvement within the context of a closed period of benefits" (Doc. 13 at 9), the ALJ carefully and fully addressed the medical evidence from the alleged closed period in his decision (*see* AR 14–16), and reached a reasonable determination that it did not warrant a finding that Plaintiff was disabled. While Plaintiff obviously disagrees with the ALJ's assessment, he fails to articulate exactly what medical evidence supports his belief that he was disabled during the alleged closed period. Because the ALJ's evaluation of the evidence and findings that Plaintiff did not suffer an impairment for a continuous period of twelve months is supported by substantial evidence, it was not error for the ALJ not to consider Plaintiff's eligibility for a closed period of disability. *See Felton v. Colvin*, No. 2:15-CV-2315-CKD, 2016 WL 6803680, at *4–6 (E.D. Cal. Nov. 17, 2016); *Miller*, 2014 WL 3735345, at *11. *See also Rosales*, 2013 WL 1410387, at *4–5; *Laib v. Astrue*, No. CV–09–0142–CI, 2010 WL 2218294, at *3–5 (E.D. Wash. May 26, 2010); *Jolliff v. Barnhart*, No. C 02–03855 WHA, 2003 WL 21715327, at *2–3 (N.D. Cal. July 16, 2003).

//

//

**VI.     CONCLUSION AND ORDER**

After consideration of the Plaintiff's brief and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **August 21, 2017**                         /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE